UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DWAYNE E., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 20 C 4103 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dwayne E. seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). An administrative law judge determined that Dwayne was not disabled because he could perform light work with some limitations. Dwayne seeks reversal and remand of the final decision of the Commissioner of Social Security. The Commissioner moves for summary judgment [19] seeking affirmance of the decision denying benefits. For the reasons explained below, the ALJ's denial of Dwayne's application for DIB is reversed and remanded for further administrative proceedings.

## BACKGROUND

Dwayne (who was 50 at the time of the ALJ's decision) alleges disability due to spinal stenosis, bulging discs, spinal curvature, and dyslexia. (R. 48). Dwayne has a long history of medical issues including chronic back pain, spinal stenosis, degenerative changes to vertebral endplates, osteoarthritis of lumbar spine, and bulging lumbar discs. *Id*. at 297, 529, 599, 496, 1918. His back pain increased significantly after he was injured at work in December of 2017. *Id*. at 731. Dwayne was injured while pushing a thousand-pound heavy goods vehicle engine. *Id*. at 308, 644, 731. He was treated with pain medications such as Percocet and valium and with physical therapy.

*Id*. at 306, 644, 1504. Dwayne was discharged from therapy because he experienced increased pain with the treatment and because his symptoms were not improving. *Id*. 662. Dwayne uses a cane to help him walk without stumbling. *Id*. at 1504. He began using a cane for support six months after his work injury. *Id*. at 30. Dwayne completed three years of high school and his prior work was as a welder and forklift operator *Id*. at 72-73, 542.

On July 25, 2019, the ALJ issued a decision denying Dwayne's DIB claim. (R. 79-95). Following the five-step sequential analysis, the ALJ found that Dwayne had not engaged in substantial gainful activity since his alleged onset date of December 30, 2017 (step 1) and that he suffered from the severe impairments of degenerative disc disease of the thoracic and lumbar spine; diverticulosis; bilateral inguinal hernias; depression; alcohol abuse; and anxiety (step 2). *Id*. at 82. Further, the ALJ determined that Dwayne's mental impairments were non-severe and did not satisfy the Paragraph B criteria because he experienced only a moderate limitation in understanding, remembering, or applying information, mild limitation in interacting with others, mild limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself. *Id*. at 82-83. The ALJ then determined that Dwayne's impairments did not meet or equal the severity of a list impairment (step 3). *Id*. at 82. The ALJ next found that Dwayne retained the RFC to perform light work except that he can never: climb ladders, ropes, or scaffolds and can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id*. at 84. The ALJ determined that Dwayne must avoid concentrated exposure to hazard and must be able to shift positions from sitting standing or vice versa for one to two minutes every thirty minutes while remaining on task. *Id*. At step 4, the ALJ concluded that Dwayne had no past relevant work. *Id*. at 93. Given the RFC, at step 5, the ALJ determined that Dwayne could perform three other jobs identified by the VE: price marker, mail sorter, and assembler. *Id*. at 94. Based on this step 5

finding, the ALJ found that Dwayne was not disabled. *Id.* at 95. The Appeals Council denied Dwayne's request for review on May 18, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotations omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted). "Although this standard is generous, it is not entirely

3

uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.* In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele*, 290 F.3d at 938, 941 (internal citation and quotations omitted).

Dwayne challenges four aspects of the ALJ's assessment of his residual functional capacity. Specifically, he complains that the ALJ: (1) erred by failing to assess Dwayne's need to use a cane; (2) erred in assessing the opinion evidence; (3) failed to support the functional capacity finding; (4) and failed to properly assess Dwayne's symptoms. As explained below, the Court finds Dwayne's first challenge to the RFC determination persuasive and remands this case for further administrative proceedings on that basis.

Dwayne argues the ALJ's failure to assess his cane use in the RFC requires remand. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue,* 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 416.945(a)(1). An ALJ's failure to address a claimant's need to use a cane in the RFC evaluation may require remand. *See Thomas v. Colvin,* 534 F. App'x 546, 550 (7th Cir. 2013); *Dean v. Berryhill*, No. 16 C 9269, 2018 WL 3608555, at *4 (N.D. Ill. July 27, 2018).

Here, the vocational expert at Dwayne's ALJ hearing testified that cane usage would preclude a claimant from performing the three light work occupations the VE suggested Dwayne could perform. R. at 42. Importantly, the VE opined that if a person with Dwayne's occupational

4

base needed a cane that would reduce that person to sedentary work. *Id*. For those reasons, Dwayne's cane use would erode light work leaving only sedentary work, which should result in a disability finding under the Agency regulations known as the Medical-Vocational Guidelines given his age and other vocational factors. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201 (providing that an individual approaching advanced age between ages of 50 and 54 is disabled if limited to sedentary work, has education that does not provide for direct entry into skilled work, and has no transferable skills from previous work experience); *Thomas*, 534 F. App'x 546, 550–51 (finding 52-year-old plaintiff would be disabled under the grids if she could perform only sedentary work). Therefore, if the ALJ did fail to properly evaluate Dwayne's use of a cane, the error is not harmless and requires remand.

Upon review of the record, the Court finds that the ALJ's failure to evaluate Dwayne's cane use in the RFC assessment is reversible error. There is substantial evidence in the record supporting Dwayne's cane use which the ALJ should have, at a bare minimum, mentioned in her functional limitation evaluation. *See Davis v. Berryhill*, No. 16-CV-7372, 2017 WL 4772714, at *7 (N.D. Ill. Oct. 23, 2017) (finding the ALJ erred by not addressing the claimant's use of a cane in assessing his RFC); *Dean*, 2018 WL 3608555, at *4; *Tovar v. Berryhill*, No. 18 CV 2260, 2018 WL 6696568, at *3 (N.D. Ill. Dec. 20, 2018) (An ALJ must always "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). Lacking in this ALJ's disability determination is an evaluation that bridges the ALJ's reasoning with the outcome.

Dwayne's cane use was noted in numerous parts of the record. First, the agency reports signed off by Dr. Bilinsky and Dr. Mandala note Dwayne's cane use and slow gait under the sections for exertional and environmental limitations. (R. 47-74, 55, 56, 70). Dr. Bilinsky's

records also note that Dwayne previously presented to the agency's field office with a cane and that he moaned throughout the interview. *Id*. at 50, 208. Next, the records for Dwayne's first physical therapy evaluation session after his work accident on January 22, 2018 note that he used a cane due to his inability to walk without stumbling. *Id*. at 1504. A month later when Dwayne went to the emergency room for treatment of his abdominal pain, the records indicate he used a cane as an assistive device. *Id*. at 1390. Furthermore, during his evaluation visit with Dr. Rana on March 13, 2018, Dwayne expressed that he experienced difficulty walking more than half a block and that his doctor recommended the cane. *Id*. at 541. Dr. Rana's notes also describe Dwayne inability to tandem walk and his moderate difficulty with walking on toes and heels and squatting and arising. *Id*. at 543. Dr. Rana also listed "cane" under "need/use of assistive device." *Id*. Moreover, Dr. Rana recognized that Dwayne's walk was slow with the cane, that he walked without the cane in the exam room, and that he could slowly walk more than 50 feet without assistance. *Id.* at 544. Following that visit, Dwayne had a psychiatric examination by Dr. Gil who also noted his slow walk and use of a cane to ambulate. *Id*. at 552. Dwayne had a second round of physical therapy with Shandrea Boyd starting on April 24, 2018 and those records also note that he reported stumbling while walking and intermittent cane use for ambulation. *Id*. at 644. Boyd further stated that Dwayne wanted to wean off use of the cane but had an antalgic walk and decreased cadence. *Id.* at 645, 646. The records note that Dwayne's goal of increased cadence without the use of an assistive device was not met at the end of his therapy treatment. *Id.* at 664. Dwayne continued his treatment with Dr. Harsoor, a pain management specialist, and the records for those visits state "patient *uses does not use* assistive device.[1]" *Id.* at 1907, 1911, 1940, 1944,

---

[1] The ALJ maintains, and the Commissioner affirms, that Dr. Harsoor's records indicate Dwayne did not use an assistive device despite the nonsensical order of Dr. Harsoor's words in the statements regarding his cane use. R. 88

6

1948, 1952. Dwayne's cane use appears again in the records for his emergency room visit on September 12, 2018. *Id*. at 1644. Lastly, Dwayne's primary care physician referenced his cane use in her medical source statement, noting that Dwayne used the cane to do any kind of walking, and that he specifically needs it for balance, weakness, pain, and his unsteady gait. *Id*. at 728.

Dwayne's own subjective report revealed his cane use. On February 9, 2018, Dwayne completed an adult function report, where he stated that his doctor suggested he use a cane and that he used a cane most of the time to ambulate. *Id*. at 216. He also noted that he used an electric cart when he and his wife shopped for food. *Id*. at 213. His wife also reported that Dwayne used a cane for stability, that his doctor recommended the cane, that his walk was slow with the cane, and that he makes attempts to move about in the house without a cane. *Id*. at 223, 225, 228. At his hearing on June 14, 2019, Dwayne stated that the cane helps with his pain and that he is able to walk for about 50 feet without the cane. *Id*. at 29, 30. He further testified that he could walk from the sofa to the bathroom and vice versa without a cane. *Id*. at 38.

Despite this record evidence, the ALJ mentioned only a few instances of Dwayne's cane use in her recitation of Dwayne's medical history, starting with Dwayne's testimony at the hearing. *Id*. at 85. The ALJ went on to cite to Dr. Rana's evaluation noting that Dwayne was able to walk without the cane in the exam room and that he walked more than fifty feet without assistance. *Id*. at 86. The ALJ moved on to point to Dwayne's physical therapy evaluation on April 28, 2018 where she stated that he intermittently used a cane for ambulation. *Id*. at 87. Finally, disregarding the likely typo in the record, the ALJ asserts that Dwayne did not use an assistive device when he treated with Dr. Harsoor. *Id*. The ALJ did not say anything more to address the additional evidence of Dwayne's cane use in the record. In her concluding statements about Dwayne's RFC, she reasoned that Dwayne's capacity to perform light work was based on his medical imaging results

and his own testimony regarding his ability to lift twenty pounds, and that any further limitations were not justified by the record as a whole. *Id*. at 92-93.

An ALJ must articulate a "logical bridge between the evidence and the conclusions so that the court "can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Gass v. Berryhill*, No. 1:16-CV-292 RLM-SLC, 2017 WL 3705060, at *1 (N.D. Ind. Aug. 28, 2017); *see also Dean*, 2018 WL 3608555, at *4 (remanding where the ALJ failed to thoroughly examine and articulate logical reasons for disregarding ample evidence of claimants need for an assistive device in making his disability determination); *Newell v. Astrue*, 869 F. Supp. 2d 875, 892 (N.D. Ill. 2012) ("An ALJ must always "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.") This Court recognizes that the Seventh Circuit has recently stated that "the "logical bridge" language in caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). The Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). In this Court's view, the logical bridge provision has always been descriptive and never a standard of review on its own. "Logical bridge" is simply a more sophisticated way of saying "analysis" – a basic function that should be contained in all judicial opinions. In any setting where a court conducts judicial review of a lower court's decision, the reviewing court looks not just for statement of facts or a summary of the evidence, but rather an analysis of those facts in light of the

applicable law and an articulation of the reasons, however minimal, for the judge's conclusion. This concept is no different in a district court's review of an ALJ opinion. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("The ALJ is not required to address every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits."); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("The ALJ must at least minimally articulate the analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Steele*, 290 F.3d at 940 ("when the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.")

Here, the ALJ does even less than the bare minimum to assess Dwayne's cane use, resulting in a decision that is not supported by substantial evidence. In the ALJ's recounting of Dwayne's medical history she pointed to only a handful of instances in the record where Dwayne's cane use was noted. Yet, the ALJ's brief recitation of Dwayne's cane use does not reveal what significance if any the ALJ attached to Dwayne's cane use. Moreover, the ALJ utterly failed to connect Dwayne's case use with her RFC determination, which was a finding of light work, and which (according to the vocational expert) cannot be performed using a cane.

The error in this case – or to put it another way, the lack of substantial evidence supporting the ALJ's decision – is more egregious than other cases involving cane use. Courts have remanded even in situations where the ALJ made at least a meager effort to examine cane use and establish a logical reasoning for disregarding evidence of cane use. For example, in *Tovar v. Berryhill*, the ALJ rejected the claimant's contention that he used a walker or cane by explicitly stating in the opinion that there was no evidence of the need for a cane in the treatment record. 2018 WL 6696568, at *3. The court determined that the ALJ ignored references in the record of claimant's

9

cane use and failed to articulate a logical reasoning behind the decision to find claimant was not limited by the use of a cane or a walker. *Id.* at 3-5. In *Frazier v. Saul*, the court remanded where the ALJ provided no explanation for concluding that claimant did not need a cane on an ongoing basis despite evidence and testimony to the contrary. No. 19 C 5785, 2020 WL 4208109, at *5 (N.D. Ill. July 22, 2020). There, the ALJ had stated the claimant "would not have needed a cane on an ongoing basis during the period at issue." *Id.* (internal citations omitted). The district court rejected this conclusory statement as failing to confront the evidence and explaining why the claimant's need for a cane was rejected.

In the present case, the ALJ failed to make any statement about Dwayne's cane use or his need for a cane like the ALJs in *Tovar* and *Frazier*. The ALJ's decision was thus without meaningful evaluation. It is unknown if the ALJ here considered any of the evidence related to Dwayne's cane use or need for a cane in formulating the RFC. Reading the ALJ's opinion liberally, the ALJ stated at one point that "any further limitations were not justified by the record as a whole." *Id*. at 92-93. However, this conclusory assertion is a deficient assessment of the record evidence on claimant's use of a cane and, frankly, even less of an explanation than what the ALJs in *Tovar* and *Frazier* provided.

The Commissioner defends the ALJ's failure to assess Dwayne's cane use by recounting only a portion of the medical record. The Commissioner argues that the ALJ purportedly explained why plaintiff did not require a cane to ambulate through her discussion of this evidence. Specifically, the Commissioner references Dwayne's visit with Dr. Donkoh where, according to the Commissioner, Dwayne had a positive straight leg raise test and full strength and sensation in the legs. However, the record provides a different story – it reflects that Dwayne described a stabbing, shooting pain that resembled a knife moving around in his back during his examination

10

with Dr. Donkoh. (R. 706). Furthermore, Dr. Donkoh noted that Dwayne had significant difficulty raising his legs to cooperate with the exam. *Id*. at 707. He also noted that Dwayne's attempt at a straight leg raise elicited pain in his lumbar region. *Id.* Finally, after his examination, Dr. Donkoh determined that Dwayne's work capacity was limited to desk duty or sedentary work. *Id.* at 708. Next, the Commissioner discussed Dr. Rana's examination of Dwayne and inaccurately stated that Dwayne was able to walk on his toes and heels during that visit. The record evidence actually shows that, during this examination, Dwayne experienced moderate difficulty with walking on toes and heels and squatting and arising. *Id*. at 543.

Additionally, the Commissioner points out that Dwayne was able to walk without a cane in Dr. Rana's exam room for more than 50 feet unassisted, as evidence that eliminates the need for a cane. However, this logic has been squarely rejected. *See Thomas,* 534 F. App'x at 551 ("walking for 50 feet without a cane— 'a brief excursion'—does not demonstrate an ability to stand for 6 hours."). Even if Dwayne is able to walk for 50 feet and walk from his sofa to the bathroom without a cane, that does not translate into his ability to perform light work or tolerate a full-time job. *Dean,* 2018 WL 3608555, at *4 ("although the Commissioner cites to medical evidence in the record that claimant can walk 50 feet without use of an assistive device, this is not the same as the ability to sustain full time employment."); *Andrew B. v. Saul*, No. 19 C 1592, 2020 WL 2085002, at *4 (N.D. Ill. Apr. 30, 2020) ("Even so, walking 50 feet without a cane does not translate into an ability to walk or stand for six hours in a work setting.").

In further arguing that the ALJ did consider Dwayne's cane use in a meaningful way, the Commissioner advances Dr. Harsoor's note, which as a result of the typo described above, is actually incomprehensible and can cuts both ways. Next, the Commissioner calls into question Dwayne's credibility with respect to how long he could stand and walk. The Commissioner argues

11

that Dr. Bilinsky and Dr. Mandala did not find that Dwayne required a cane because they simply noted his cane use, and thus there was nothing for the ALJ to address as to Dwayne's cane use. But our situation here is similar to the one the Seventh Circuit faced in *Thomas v. Colvin*. In *Thomas*, the court found that the error was "not that the medical evidence *required* the ALJ to find that Dwayne needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving the Court without a finding to review." 534 F. App'x at 550. Like in *Thomas*, the ALJ's mention of Dwayne's repeated cane use alone requires the ALJ to engage in a discussion about the impact of that limitation in the RFC findings. The ALJ was obligated to articulate her evaluation of Dwayne's cane use and ultimately provide a logical bridge between the evidence of his cane use and her conclusion. *Tovar*, 2018 WL 6696568, at *3 ("because of this explanatory void, the Court cannot trace the ALJ's reasoning behind the decision to find Plaintiff not limited by a need to use a cane or a walker and, thus, remand is required."). The Commissioner and the ALJ also ignore Dwayne's own testimony about his cane use, his primary physicians' opinion regarding his cane use, and not to mention the several other cane references in the record. (R. 216, 223, 225, 228, 552, 644, 728, 1390, 1504, 1644). Moreover, although light work requires an ability to stand and/or walk for up to six hours of an eight-hour workday, the ALJ's decision is void of a discussion about how Dwayne's cane use is consistent with prolonged ambulation. *Andrew B.,* 2020 WL 2085002, at *4. In short, this Court is unable to determine if Dwayne's cane use was ignored, overlooked, or simply not believed. *Tovar*, 2018 WL 6696568, at *5.

Strangely, while the ALJ did not evaluate Dwayne's cane use in her RFC assessment, she did present the issue in her hypothetical question to the VE. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("In this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.").

12

During Dwayne's hearing, the ALJ asked the VE if cane usage would reduce a person who worked as a price maker, mail sorter, or assembler to sedentary work, and the VE responded affirmatively. (R.42). In *Andrew B.*, this Court found that the ALJ's failure to include the claimant's need for a cane for prolonged ambulation in the RFC assessment and hypothetical to the VE was reversible error. 2020 WL 2085002, at *3. This Court determined that the ALJ was required to ask the VE whether his answers regarding the claimant's RFC to perform the light work jobs identified by the VE would be different if the hypothetical individual relied on a cane for prolonged ambulation. *Id*. at 5.

Notwithstanding that the ALJ did ask the VE the relevant question in this case, the outcome was no different than the one in *Andrew B.* because the ALJ chose to wholly ignore the VE's response in her RFC evaluation. In both cases, had the ALJs incorporated the claimant's cane use for prolonged ambulation in the RFC they may have concluded that the claimants were only capable of performing sedentary work. *Id.* In the present case, that error is critical because if Dwayne, given his age, had been limited to sedentary work, the agency's Medical Vocational Guidelines would dictate a finding of disabled. Further, because the record does not reveal that Dwayne could perform the jobs identified by the VE with the use of a cane, the Court cannot find that the ALJ's error in evaluating this limitation from the RFC was harmless. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2010) (holding error cannot be deemed harmless unless the Court can find "with great confidence" that the result would be the same on remand). Accordingly, this case must be remanded for reevaluation of the RFC. On remand, the ALJ shall include an evaluation of Dwayne's cane use for ambulation in formulating the RFC and explicitly explain how Dwayne's cane use does or does not alter her determination.

13

Because this error regarding Dwayne's use of a cane for prolonged ambulation is sufficient to warrant remand, the Court declines to address the remaining errors asserted by Dwayne. On remand, Dwayne may raise his arguments regarding any other alleged errors by the ALJ. *See* 20 C.F.R. §§ 416.1483, 416.1484 (when a case is remanded by a federal court for further consideration, "[a]ny issues relating to your claim may be considered . . . whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

## CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [19] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: October 12, 2021

                                                  Sunil R. Harjani
                                                  United States Magistrate Judge